Barnes & Irving, Inc. *v.* Phillips & Sons Company,
By Ebrey, Receiver, Appellant.

Argued October 11, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Frederick H. Warner,* for appellant.

*Cecil P. Harvey,* and with him *Martin Feldman* and *William Horenstein,* for appellee.

OPINION BY TREXLER, J., January 25, 1929:

The plaintiff, a broker at Syracuse, New York, in February 28, 1920, ordered by mail of the defendant, a broker, at Philadelphia, a quantity of steel billets to be shipped f. o. b. Pittsburgh to Hammond & Irving, Inc., Auburn, New York, who intended to use the billets in the manufacture of steel castings. The billets were technically known as 6″ square, .10-.20 carbon and were duly delivered to Hammond & Irving, Inc., who "after a little found that the size of the billets was not in demand by them." The plaintiff paid for the billets and after being advised by Hammond & Irving, Inc., of their refusal to keep them, resold them to T. Hanlon & Sons Co., of Rochester, N. Y., brokers, who in turn sold them to the Rochester Forging Company for forging purposes and the latter rejected them, the carbon content being largely in excess of the amount stipulated in the original order. On October 20, 1920, the plaintiff in writing notified the defendant that the billets did not comply with the terms of plaintiff's order and later they were shipped back to defendant who refused to take them.

Under ordinary business practice, when plaintiff purchased the billets, it would have been its duty, after a reasonable time for inspection or test, to return them if not according to the contract. Sales Act, 19th May, 1915, P. L. 543, Section 48. It, however, alleges that there is a custom among the steel trade which is to the effect that when a broker buys, he is not required to test the billets. That the test is de-

ferred indefinitely until they arrive in the hands of the ultimate purchaser who buys for the purpose of using them in the process of manufacture. There was testimony produced by the plaintiff to show that such was the custom, the reason for the rule being that brokers do not usually have actual possession and do not have facilities for testing and that the act of testing is necessarily delayed until the user of the billets has them. It is clear that the custom which we assume for the present argument was shown to exist, applies only to brokers and has no application to the present case. It will be observed that the plaintiffs who were brokers, bought from the defendants, who were brokers, to be delivered to Hammond & Irving, Inc. When the billets came into the possession of the latter, who, we repeat, was not a broker but a manufacturer and who was the company for whom the plaintiffs acted as brokers, they were in the hands of a party presumably possessing the facilities for making the test. The continuity or succession of brokers ended. The rule as to brokers did not apply to Hammond & Irving, Inc. As far as the defendant is concerned, it was the ultimate purchaser. When Hammond & Irving, Inc., rejected the billets, not because of their carbon content, but because they were not of the size they desired, the defendant was not made aware of the transaction. Later he could assume that as he had heard nothing about the billets that Hammond & Irving, Inc., had used them or at least had inspected them and found them satisfactory. After a lapse of a reasonable time for inspection, the transaction under the circumstances was closed so far as the defendant was concerned. There is no reason why a person buying billets for his own use is not required to use the same promptness as to inspection or testing as a purchaser of any other material. This is not a transaction such as appeared in Crunden Martin Mfg. Co. v. Turner, 274 Pa. 425, where the articles

were sold in closed packages which did not permit any inspection until opened for use and which according to usage were inspected when used, but analysis of billets can as well be made promptly after receipt as later. However reasonable a delay of eight months might be considered, in applying the custom in regard to brokers, there is no question that as to the consumer, it is too long. What is reasonable time on uncontradicted facts is for the court. Riddle Co. v. Taubel, 277 Pa. 95, and cases there cited. Eight month's having elapsed before the goods were returned, it was the duty of the court below to direct a verdict for the defendant.

The judgment is reversed and is now entered in favor of the defendant.